# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:09cv230

| | |
|---|---|
| JENNIFER M. WARREN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 13].

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits as well as for Supplemental Security Income benefits on September 1, 2004, alleging disability with an onset of June 21, 2004. [Transcript ("T.") 81]. Plaintiff's claims were denied initially and on reconsideration. [T. 52-6, 48-50]. A hearing was held before Administrative Law Judge (hereinafter, "ALJ") Ivar Avots on February 22, 2008, at which

Plaintiff, who was represented by counsel, appeared and testified. [T. 1073-1117]. On February 22, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 23-33]. The Appeals Council considered additional evidence presented by the Plaintiff following the hearing, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 7-10]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner <u>de novo</u>. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or

work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

On February 22, 2008, the ALJ issued a decision denying the Plaintiff's claim. [T. 23-33]. Proceeding to the sequential evaluation, the ALJ found that

the Plaintiff's date last insured was December 31, 2008. [T. 25]. He then found that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date of June 21, 2004. [T. 25]. The ALJ then found the following impairments to be severe impairments: coronary artery disease with history of myocardial infarction, diabetes mellitus, and depression. [T. 25]. While noting Plaintiff's alleged back pain, shoulder pain, and hip pain, the ALJ concluded that these conditions did not result in any significant vocationally relevant limitations and thus were not severe impairments. The ALJ further noted that he considered the Plaintiff's alleged cognitive problems and borderline intellectual functioning but found these conditions too to be "non-severe." [T. 26].

Referencing only Plaintiff's depression, the ALJ then concluded that Plaintiff's severe impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [T. 26]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that she could perform medium unskilled work in a no production environment with no more than occasional contact with the general public. [T. 27]. He concluded that Plaintiff was unable to perform her past relevant work, and therefore transferability of skills was not an issue. [T. 31, 32]. Relying upon the

testimony of a vocational expert, the ALJ then determined that there are jobs in significant numbers within the unskilled medium occupational base that Plaintiff could perform. [T. 32-33]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from June 21, 2004 through the date of the ALJ's decision. [T. 33].

## V. DISCUSSION

On appeal, Plaintiff asserts several assignments of error. First, she argues that the ALJ erred in rejecting Plaintiff's neuropathic pain, shoulder pain, cognitive problems, borderline intellectual functioning, incontinence, sleep apnea, and obesity as severe impairments at step two of the sequential evaluation. She next argues that the ALJ erred in evaluating the combined effect of Plaintiff's impairments at step three. Plaintiff also takes issue with the ALJ's evaluation of Plaintiff's credibility and his mental RFC assessment. Finally, she argues that the Commissioner failed to weigh the new and material evidence she submitted to the Appeals Council. Because the ALJ erred at steps two and three of the sequential evaluation, the Court concludes that the Commissioner's decision must be reversed and this case remanded for further proceedings.

**A. The ALJ erred in his determination of Plaintiff's severe impairments at step two of the sequential evaluation.**

At step two of the sequential analysis, Plaintiff must show the existence of a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p. The burden on the claimant at this step is "not an exacting one":

> Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. In short, the step two inquiry is a *de minimis* screening device to dispose of groundless claims.

McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (internal quotation marks and citations omitted). In the present case, Plaintiff presented ample evidence that neuropathic pain, shoulder pain, cognitive issues, borderline intellectual functioning, incontinence, sleep apnea, and obesity all produce more than a minimal effect on her ability to perform basic work activities.

1.  **Neuropathic Pain**

Plaintiff testified that she experiences pain in both her back and her feet. She testified that the pain in her feet feels "like somebody's set them on fire," and that the pain is so great she "can't stand nothing to touch them," even shoes or socks. [T. 1087]. She further reported that she can only be on her feet for 15-20 minutes before she starts hurting, and that she cannot stand long enough to prepare a meal. [T. 1100]. The Plaintiff attended physical therapy for lower back and hip pain for eleven months. When she was discharged from physical therapy for reaching the maximum benefit of therapy, it was noted that she was only partially able to tolerate standing long enough to prepare a meal without pain. [T. 887]. Furthermore, treatment notes from 2007 and 2008 show continuing back pain on palpation, even after three courses of physical therapy and trigger point injection treatment. [T. 691, 1060].

Plaintiff's endocrinologist, Dr. Russell, and her orthopedist, Dr. Hankley, both opined that her pain was due to diabetic neuropathy. [T. 592, 692]. One month after her hearing, electro-diagnostic testing ordered by Dr. Hankley confirmed a diagnosis of peripheral neuropathy. [T. 1063]. Furthermore, Plaintiff's treating physician, Dr. Coin opined in a post-hearing statement that

due to neuropathic nerve damage in her back, as well as her ongoing coronary artery disease, depression, and medication side effects, Plaintiff's ability to do work-related activities is severely limited, to the point of permanent disability. [T. 1025-29]. While such opinion is not binding on the Commissioner, see 20 C.F.R. §§ 404.1527(e), 416.927(e), it does constitute substantial evidence that Plaintiff's neuropathic pain constitutes a severe impairment that affects her ability to perform basic work activities.

2. **Shoulder Pain**

The ALJ found that Plaintiff's shoulder pain did not cause any vocational limitations, noting that the Plaintiff was starting to experience some relief of her shoulder pain by September 2005. [T. 29-30]. Plaintiff's medical records indicate, however, that by October 2006, her shoulder pain had returned. [T. 950]. Furthermore, when Plaintiff was released from physical therapy in September 2007, she was noted to still have "difficulty adjusting" her shoulder. [T. 887]. The record further shows that Plaintiff consistently reported that she needed help getting dressed due to shoulder pain [T. 90, 98, 108, 118, 130, 1091], and that her treating physician was prescribing pain medication for her shoulder at the time of her hearing [T. 170, 936]. Based on the evidence of

record, the Court concludes that the ALJ erred in failing to consider Plaintiff's shoulder pain to be a severe impairment.

### 3. Cognitive Problems and Intellectual Functioning

The record indicates that Plaintiff underwent a consultative examination by Jerelene Howell, M.S., on October 8, 2004 at the request of Disability Determination Service (DDS). [T. 419]. Ms. Howell administered a Wechsler Adult Intelligence Scale-III (WAIS-III) on which Plaintiff achieved a verbal IQ of 69, a performance IQ of 86, and a full scale IQ of 75. [T. 421]. Ms. Howell noted that Plaintiff's verbal IQ was "within the extremely low or mild mental retardation range" and that overall Plaintiff was functioning within the borderline range of intellectual abilities. She concluded that "[c]onsidering her intellectual, physical, and emotional challenges, it would be difficult for [Plaintiff] to cope with the demands and stressors inherent in most work situations." [T. 422-23].

The ALJ gave only minimal weight to the results of the 2004 consultative examination, particularly the results of the IQ testing. [T. 31]. Specifically, the ALJ noted that the Plaintiff had attained higher IQ scores in tests administered to her at 9 and 12 years of age, respectively. [Id.]. This conclusion, however, is problematic. First, the 2004 test was the WAIS-III, while the tests from 1982

and 1984 were the Wechsler Intelligence Scale for Children ("WISC-R"). While both tests measure IQ, these tests use different criteria and therefore their scores are not directly comparable. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(D)(6)(c) (recognizing that "identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning"). Furthermore, as noted by Dr. Zeisz in a post-hearing evaluation:

> The scores achieved at 9 and 12 are not considered a valid representation of current functioning. It must be kept in mind that IQ tests are meant to reflect a person's adaptive capacity at any given time but also reflect academic achievement at a given age. Adult learning opportunities, job training, life experiences, hobbies, individual interests and other factors can all influence a person's IQ score as they grow older. Depression and chronic medical problems such as diabetes have been shown to have a negative impact on a person's ability to perform on formal tests. The 9 point decline in her IQ scores from age 9 to age 12 is likely a reflection of the consequences of juvenile diabetes that has been clearly documented to impair cognitive functioning. Fluctuations in blood sugar associated with diabetes and lack of oxygen to the brain associated with heart attacks are probably explanations for the decline in current cognitive functioning. It is very reasonable to assume that with ongoing diabetes and the addition of two heart attacks that cognitive functioning could be further impaired.

[Tr. 1034]. Dr. Zeisz's post-hearing psychological evaluation resulted in IQ scores identical to those found in the October 2004 consultative examination [T. 1032], a fact which strongly suggests that these recent scores more accurately reflect Plaintiff's current level of functioning. Despite this evidence, however, the ALJ gave no explanation for discrediting Plaintiff's more recent IQ scores in favor of her childhood scores.

The lowest of Plaintiff's 2004 scores, a 69 for verbal IQ, is clearly within the range in Listing 12.05(C). 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(C). The ALJ failed, however, to conduct the necessary evaluation to determine if Plaintiff met the § 12.05(C) criteria. Even if the requirements of that Listing were not met, Plaintiff's more recent evaluations suggest that her functioning may be significantly more impaired than the ALJ allowed. For these reasons, the Court concludes that the ALJ erred in evaluating Plaintiff's cognitive abilities and intellectual functioning.

### 4. Incontinence

The Plaintiff was first diagnosed with incontinence in 2005, as possibly associated with her diabetes. [T. 958]. At the ALJ hearing, she testified that she was still experiencing frequent incontinence and that it is "a big problem," requiring her to wear a protective pad and stay close to a bathroom. [T.

1097-98]. Plaintiff's need to take frequent, unscheduled breaks could reasonably affect her ability to perform sustained work activities, and thus it was error for the ALJ not to consider this condition in evaluating the existence of Plaintiff's severe impairments.

### 5. Obesity and Sleep Apnea

In the present case, there is abundant evidence throughout the record detailing Plaintiff's obesity . [T. 338, 419, 765, 797, 832, 929]. Similarly, there is abundant evidence of fatigue, a condition which was variously attributed to her weight, depression, diabetes, and her heart condition, as well as to being a side effect of her medication [T. 775, 877, 892, 895, 901, 903, 905, 980, 983]. In addition, Plaintiff complained to her treating physician in 2005 of fatigue, restless sleep, and hypersomnia. [T. 963]. Following a sleep study, Plaintiff was diagnosed with obstructive sleep apnea and periodic leg movement disorder. [T. 992]. Consistent with the medical records, Plaintiff testified that even with the use of a C-PAP machine, she still had trouble with hypersomnia, is fatigued during the day. She said that sometimes she was only able to sleep 30 minutes in a night, but at other times she would sleep 24 to 32 hours at a stretch. [T. 1099]. At the consultative examination in 2004, Plaintiff reported sleep disturbance and fatigue, and the examiner noted

"some deficiencies in concentration, persistence and pace resulting in failure to complete some task[s] and in a timely manner." [T. 420]. At the 2008 evaluation by Dr. Zeisz, Plaintiff rated her fatigue at a seven to eight on a ten-point scale. [T. 1030]. In light of this evidence regarding Plaintiff's obesity, sleep apnea and related fatigue, the ALJ erred in failing to evaluate the effect of these conditions on Plaintiff's ability to perform basic work-related activities.

Given the evidence described above establishing numerous impairments and their potentially limiting effect on Plaintiff's ability to perform basic work activities, the Court concludes that the ALJ erred in his evaluation of Plaintiff's impairments at step two of the sequential evaluation.

**B. The ALJ failed to consider Plaintiff's impairments in combination.**

At step three, the ALJ must consider whether Plaintiff's impairments, meet or equal a Listing. 20 C.F.R. § 404.1520(d). As the Fourth Circuit has recognized:

> It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effective of various impairments upon a disability benefit claimant, the Secretary must consider the

> combined effect of a claimant's impairments and not fragmentize them.

Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989); 20 C.F.R. § 404.1523.

Here, the ALJ failed at step three of the sequential evaluation to analyze the effect of the combination of Plaintiff's severe impairments at step two. Indeed, the only condition explicitly discussed by the ALJ at this step was Plaintiff's mental impairment; no mention is made in his analysis of the other conditions which he found to be severe. Compounding the ALJ's error at step three was his failure to consider the full range of severe impairments suffered by Plaintiff. As noted above, Plaintiff suffers from a number of medical problems, including fatigue, obesity, depression, and diabetes, all of which appear to be inter-related. This combination of impairments creates a complex medical situation which the ALJ was required to consider as a whole. See 20 C.F.R. § 404.1523; Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004). For these reasons, the Court concludes that the ALJ's step three analysis is legally insufficient and requires a remand of this case.

In light of this decision, Plaintiff's other assignments of error need not be addressed, but she is free to raise them upon remand.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying her disability benefits. To any extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 11] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 3, 2011

Martin Reidinger
United States District Judge